2021 IL App (1st) 191535-U

FOURTH DIVISION
June 24, 2021

No. 1-19-1535

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF, | ) ) ) | Appeal from the Circuit Court of Cook County |
| JASON M. ANDERSON, | ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 18 D 630077 |
| VIKKI L. ANDERSON, | ) ) | |
| Respondent-Appellee, | ) ) | |
| and | ) ) | Honorable Sharon O. Johnson, |
| ELFREDA DOCKERY, | ) ) | Judge Presiding. |
| Appellant. | ) ) | |

_____

JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming the denial of an attorney fee petition under section 508 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508 (West 2018)) where the court did not abuse its discretion in finding the fees sought were unreasonable and unnecessary given the lack of complexity of the case.

¶ 2     Elfreda Dockery (Dockery), respondent Vikki Anderson's former attorney, appeals the order of the circuit court of Cook County denying her petition for attorney fees pursuant to section 508(c) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(c) (West 2018)).  On appeal, Dockery maintains that the circuit court abused its discretion when it denied the petition due to the court's incorrect determinations that (1) the divorce was uncontested and (2) the fees charged were not reasonable.  For the following reasons, we affirm.

¶ 3                                  BACKGROUND

¶ 4     On December 19, 2017, Vikki Anderson (Vikki) met with Dockery to discuss retaining her to file a petition for dissolution of marriage from Jason Anderson (Jason).  As a result of that meeting, Vikki and Dockery entered into a "Fee Agreement" which provided that Dockery would be employed "as my lawyer to draft, file and represent me on an uncontested divorce."  The agreement defined "uncontested" as follows:  "For the matter to be uncontested, all of the following must occur:  (1) all paperwork must be signed by Client's spouse, 2) the signed documents must be returned to Counsel no later than 14 days after the Petition for Dissolution of Marriage has been filed with the Clerk of the Circuit Court, and 3) only one court appearance by Counsel."  If the matter were to become contested, Vikki agreed to pay $250 for each hour of work performed by Dockery beginning upon receipt of the signed agreement.  Vikki signed the agreement and paid Dockery $825.

¶ 5     Thereafter, on January 25, 2018, Jason (through his counsel) filed a petition for dissolution of marriage in the circuit court.  Jason attempted to serve Vikki with summons through the sheriff but was unsuccessful and so a process server was appointed.  Numerous emails between Vikki and Dockery indicated that Vikki requested Dockery accept service of the petition on her behalf.  Dockery instructed Vikki to wait to be served.  Vikki was served with the

summons and petition on April 11, 2018. On April 19, 2018, Dockery filed her appearance, answer, and a counterpetition for dissolution of marriage on Vikki's behalf.

¶ 6      On May 2, 2018, the parties appeared in court for Jason's petition for temporary maintenance. Dockery was not present but had previously informed Jason's counsel of her expected absence and requested he obtain a briefing schedule on the motion. A briefing schedule was entered on the motion and the matter was continued.

¶ 7      On June 1, 2018, Vikki terminated Dockery's services. As a result, Dockery filed a motion to withdraw, which was granted on June 27, 2018. This same day, both Vikki and Jason were granted leave to represent themselves in the dissolution proceedings. In requesting leave to file a *pro se* appearance, Vikki alerted the circuit court to the fact she and Jason felt their respective attorneys had used their uncontested divorce as a way to make money by requesting unnecessary documents and paperwork and pursuing frivolous motions.

¶ 8      Dockery then filed a petition for attorney fees pursuant to section 508(c) of the Act. In the motion, Dockery asserted that while Vikki had already paid her $2497.50, Vikki still owed a remaining balance of $3181.45 for the services rendered in the contested dissolution of the marriage proceeding. Attached to the petition were copies of the fee agreement and her billing statements. The initial billing statement which was forwarded to Vikki included services performed between December 2017 and April 2018. This statement indicated that Dockery provided approximately 10 hours of professional services for a total of $2497.50 with costs of $9.52. These fees primarily pertained to communications with Vikki regarding service of process of the petition and other client communications. The billing statement further indicated that Dockery was in receipt of Jason's petition on February 5, 2018, and that she made one phone call to Jason's counsel on February 16, 2018. Dockery also billed for drafting a

counterpetition, answer, and appearance and for filing said documents in the circuit court.  She further billed for drafting a notice of filing, interrogatories, and production requests and filing those documents with the clerk's office.  Vikki had previously paid Dockery $2497.50.

¶ 9      The May 2018 billing statement indicated Dockery provided 13.15 hours of professional services for an amount of $3177.50 with costs of $3.95 for a total of $3181.45.  This amount remained unpaid at the time the fee petition was presented.  The $3181.45 fee represented billing for drafting documents, responding to emails, and drafting a response to the petition for temporary maintenance, and lastly for reviewing Vikki's answers to the interrogatories.

¶ 10     Vikki filed a written response to the fee petition in which she disputed the charges and argued they were unreasonable given the fact she and Jason agreed to get divorced.[1]  She further argued that she should be returned $1445, the amount paid to Dockery in excess of the $825 flat fee.

¶ 11     The circuit court conducted an evidentiary hearing on Dockery's fee petition with Vikki and Dockery both testifying.  Dockery testified that she has been a licensed attorney since 1989 and has "done quite a few domestic relations matters including parentage matters."  She entered into the fee agreement with Vikki and informed her that if it became contested, she would be billed at $250 an hour.  According to Dockery, Vikki did not fill out her paperwork in a timely fashion, so Jason ended up filing first.  At that point, the dissolution proceedings became contested, but she was still hoping to resolve the matter in a short period of time.  Dockery further testified that "initially, I was not going to charge her for anything beyond that.  But when it kept going on and on, that's when I did go and send her a bill for the *** work that I had

---

[1] While this matter was being briefed, Vikki and Jason (both proceeding *pro se*) obtained a judgment of dissolution of marriage in September 2018.

performed." Regarding the legal services performed beginning in May 2018 on, Dockery testified that Vikki "had difficulty answering the standard interrogatories and the production requests and the financial affidavits." This required Dockery to review Vikki's answers and make the necessary changes.

¶ 12    Vikki testified that she and Jason agreed to divorce in 2017 and that their divorce was uncontested. According to Vikki, they obtained counsel to assist with paperwork and make sure the divorce was done properly. When she met with Dockery in December 2017, Dockery indicated that she would assist Vikki in obtaining an uncontested divorce and so she signed the fee agreement. Thereafter, Jason filed a petition for dissolution of marriage and Dockery began providing legal services that she did not request, such as drafting interrogatories. Vikki also contacted Dockery on numerous occasions requesting Dockery accept service of process of the petition. Vikki strenuously maintained she did not want to engage in discovery or other litigation tactics that prolonged the dissolution proceedings. Vikki also testified that Dockery never appeared in court on her behalf during the proceedings except to withdraw as counsel. According to Vikki, "[Dockery] did not provide the service I hired her for, and she went out of her way to create extra additional work for herself and for me, and then charged me for it without letting me know." In addition, Vikki testified that while Dockery was racking up billable hours, she and Jason had already agreed to the division of their assets and that she would pay him $1600 a month in maintenance for a certain number of years.

¶ 13    After considering the testimony and evidence, the circuit court denied Dockery's fee petition. In doing so, the circuit court first found that Vikki and Dockery had entered into a legal services agreement. This agreement provided that if the divorce were uncontested, it would be a fee of $825 and if it were contested, Vikki would be billed at a rate of $250 an hour. The circuit

court further found that, upon reviewing the invoice, it was "troubled" by the fact that Dockery was retained in December 2017, but nothing was filed in the circuit court on Vikki's behalf until April 2018. In particular, the circuit court noted that there were at least three entries which indicated an appearance was drafted, but not filed. The circuit court expressed further concern at the fact that the appearance was not filed earlier, particularly where Dockery was aware that the divorce was uncontested. The circuit court also noted the lengthy period of time it took for Vikki to be served process. The court noted that the only reason Jason's counsel sought a special process server to have Vikki served was due to the fact she had not voluntarily filed her appearance, which could have been done immediately. Regarding the parties' financial affidavits, the circuit court observed that these were not exchanged until four months after the petition was filed. In the court's view, this was a matter that "certainly could have been resolved sooner than it was" and the court did not "find justification for the four-month delay between the time [Dockery was] retained and the time that [Dockery] filed the appearance." This resulted in time and money being unnecessarily spent in an uncontested divorce.

¶ 14    Regarding the payment of fees, the court found Vikki had already paid an extra $1445, which was more than the agreed upon fee for the uncontested divorce. The circuit court denied the request for additional fees in the case ($3181.45) and found that many of those fees could have been avoided and noted there were no court appearances made by Dockery.

¶ 15    Dockery filed a motion to reconsider the denial of her fee petition. In the motion, Dockery maintained that she was entitled to the $3181.45 as the dissolution proceedings had become contested and under the terms of the fee agreement, she was to be paid $250 an hour for her work on the case. Dockery also presented what she deemed to be newly discovered evidence—the testimony of Jason's counsel. According to Dockery, Jason's counsel testified at

his own fee petition hearing that the divorce was contested from its inception. Counsel testified that Jason did not know Vikki's address and when he telephoned Vikki to obtain her address to serve her with the petition for dissolution, she refused to provide it to him. He also testified that the parties had not agreed on the provisions for temporary maintenance and therefore he had to file a petition for temporary maintenance with the circuit court. Dockery further argued that the motion to reconsider should be granted because the court misapplied section 508 of the Act because her fees were reasonable and necessary.

¶ 16    In response, Vikki maintained the same position she had taken at the evidentiary hearing, that Dockery's fees were unreasonable and much of the work was unnecessary in light of the complexity involved in the case.

¶ 17    After hearing the arguments of Dockery and Vikki, the circuit court denied the motion to reconsider. First, the circuit court found the newly discovered evidence was not dispositive and would not have changed the outcome of its prior ruling. Second, the circuit court found it did not misapply the law and reiterated that it found the attorney fees charged were not necessary or reasonable given the procedural history of the case and considering the lack of complexity involved in the matter. This appeal followed.

¶ 18                                    ANALYSIS

¶ 19    As a preliminary matter, we observe that no appellee's brief has been filed in this case. We will nevertheless address the merits of this appeal under the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). Under *Talandis*, in the absence of an appellee's brief, a reviewing court should address an appeal on the merits where the record is simple, and the claimed errors are such that the court may easily decide the issues raised by the appellant. *Id.*; *In re Marriage of Earlywine*, 2013 IL 114779, ¶

¶ 20 Dockery argues on appeal that the circuit court abused its discretion when it denied her fee petition and motion to reconsider. Specifically, Dockery maintains that the circuit court incorrectly determined her fees to be unreasonable as the court improperly found the dissolution proceedings to be uncontested and therefore the services she provided were not necessary. Dockery further asserts that the circuit court failed to enforce the terms of the fee agreement and did not consider any of the six factors set forth in *Patel v. Sines-Patel*, 2013 IL App (1st) 112571, ¶ 103, when denying the petition. We first discuss our standard of review.

¶ 21 Section 508 of the Act sets forth the circumstances under which the trial court may award necessary attorney fees to a party to a marital dissolution. *In re Marriage of Ahmad*, 198 Ill. App. 3d 15, 18 (1990); 750 ILCS 5/508 (West 2018). "The attorneys for the litigants in a dissolution proceeding are considered as parties in interest in an action for attorney's fees to the extent that while such fees are generally awarded to the client, they properly 'belong' to the attorney." *In re Marriage of Baltzer*, 150 Ill. App. 3d 890, 893 (1986). Thus, as a party in interest, the attorney has standing in such cases to pursue an action for fees himself. *In re Marriage of Cozzi-DiGiovanni & DiGiovanni*, 2014 IL App (1st) 130109, ¶ 35. Section 508(c), which provides that the court may order that the award of attorney fees be paid directly to the attorney, promotes judicial economy by eliminating the need for an attorney to bring a separate suit to collect fees from his client. *In re Marriage of Birt*, 159 Ill. App. 3d 281, 283-84 (1987); see *In re Marriage of Baniak*, 2011 IL App (1st) 092017, ¶ 11.

¶ 22 The circuit court has broad discretion to determine the reasonableness of the attorney fees. An appropriate attorney fee consists of reasonable charges for reasonable services. *In re Marriage of Shinn*, 313 Ill. App. 3d 317, 323 (2000). In determining whether the fees charged

are reasonable, the trial court considers not only the number of hours the attorney spent on the case but the following factors as well: (1) skill and standing of the attorney; (2) the difficulty of the issues; (3) the amount and importance of the subject matter in the field of family law; (4) the degree of responsibility involved in the management of the case; (5) the usual and customary charge in the community; and (6) the benefits to the client. *Patel*, 2013 IL App (1st) 112571, ¶ 103. The fees allowed should compensate for the services rendered and be fair to both the attorney seeking them and the party required to pay them. *In re Marriage of Malec*, 205 Ill. App. 3d 273, 285 (1990). The most important of the factors is the amount of time spent on the case, but the time charged for must be necessary to handle the matter involved. *Id.* The burden of proof is on the attorney seeking the fees to establish the value of his services. *Shinn*, 313 Ill. App. 3d at 323. The circuit court may base its determination on the evidence presented and its own knowledge of the case. See *id.* at 325.

¶ 23     A circuit court's determination to award fees is a matter of discretion and will not be disturbed absent an abuse of discretion. *In re Marriage of Nesbitt*, 377 Ill. App. 3d 649, 656 (2007). An abuse of discretion occurs when the circuit court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the circuit court. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

¶ 24     We first address Dockery's argument that the circuit court abused its discretion when it found the dissolution proceedings were uncontested. This argument is simply not based on the record. The circuit court was aware that the matter was contested. This is particularly evident where the circuit court denied Vikki's request to return the funds in excess of the initial $825 retainer. Indeed, the circuit court found the additional $1445 Vikki had previously paid was reasonable in light of the fact Dockery engaged in discovery and assisted with Vikki's financial

affidavit.

¶ 25    Dockery next argues that the circuit court abused its discretion when it found her fees to be unreasonable and unnecessary; however, based on the record, we cannot say that the circuit court's determination was improper.  We also cannot say that the circuit court did not consider the factors set forth in *Patel*.  See *Patel*, 2013 IL App (1st) 112571, ¶ 103.  We observe that the *Patel* factors are not required by statute but are part of our common law.  See 750 ILCS 5/508 (West 2018).  Accordingly, they serve as a guide for the circuit court to use when considering an attorney fee petition.  These factors are not all-inclusive, and Dockery fails to provide us with any citation to authority that the circuit court is required to list its findings as to each of these factors when rendering its determination.  See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).  Our review of the record reveals that, based on the evidence provided along with the testimony of counsel, the circuit court was aware of the skill and standing of Dockery as an attorney, the importance of the subject matter in the field of family law, and the usual and customary charge in the community.  The remaining factors—the difficulty of the issues, the degree of responsibility involved in the management of the case, and the benefits to the client—were expressly addressed by the court in its ruling.  The circuit court found the case was not complex and we agree.  The pleadings contained in the record were basic as was the response to the motion for temporary maintenance.  The degree of responsibility in managing this case was minimal, as Vikki and Jason agreed to obtain a divorce as quickly as possible.  In addition, this was not a case that involved complex issues such as the division of extensive assets or child custody—the parties had no children.  Finally, the benefits to the client in the fees sought by Dockery were minimal at best.  The May 2018 billing statement, for which Dockery sought $3181.45, consisted primarily of email and telephone communications with her client.  She did not make a court appearance,

nor did she speak at length with opposing counsel. Moreover, the record suggests that the interrogatories she prepared (and which involved many of those client communications) were not necessary to the case at that time. See *Malec*, 205 Ill. App. 3d at 285 (the most important factor is that the time charged for must be necessary to handle the matter involved).

¶ 26    In sum, we find the circuit court did not abuse its discretion when it determined that the $3181.45 in fees sought by Dockery were unreasonable and unnecessary given the nature of the case. Based on our resolution, we need not address Dockery's argument that the trial court erred in denying her motion to reconsider.

¶ 27                              CONCLUSION

¶ 28    For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 29    Affirmed.